UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| v. | : Docket No.: 18-cr-30001-WGY |
| | : |
| NIA MOORE-BUSH | : |

**EMERGENCY MOTION FOR RELEASE
DUE TO MEDICAL NECESSITY IN LIGHT OF COVID-19**

Now comes Ms. Moore-Bush and moves this Honorable Court to release her on conditions because she is at a significant risk of contracting Covid-19 due to her incarceration and is at a significant risk of serious complications from the virus due to her underlying medical conditions. Ms. Moore-Bush proposes that she be released on home confinement monitored by an electronic monitoring bracelet and that she only be permitted to leave her home for medical treatment.

Counsel has conferred with the government, which has advised that it is considering its position and will respond as soon as possible.

**I.  Ms. Moore-Bush has serious medical conditions that already required transfer to a medical facility.**

This Court is familiar with Ms. Moore-Bush's serious medical conditions from the March 3, 2020 hearing on her Emergency Motion for Release from Custody. Dkt. 551. At that hearing, the Health Services Administrator for the facility where she was detained at the time testified that Ms. Moore-Bush suffers from a variety serious medical conditions,

including diabetes and lupus. The basis of the first motion for release was that the facility had determined that Ms. Moore-Bush's diabetes was so poorly controlled that it required transfer to a facility with an infirmary and a full-time physician. Testimony and exhibits introduced at that hearing established that Ms. Moore-Bush's blood sugar levels were so high that she was at risk for ketoacidosis and organ failure at some unknown point in the future. Despite the facility's clear medical concerns, the United States Marshals Service rejected the request for transfer, leading Ms. Moore-Bush to request release as the only alternative.

During the March 3, 2020 hearing, the Court made it clear that it shared the concerns about the severity of Ms. Moore-Bush's condition. The hearing was continued until March 12, 2020 in order to determine whether a suitable facility was available and for further testimony if necessary. Prior to the hearing, on March 9, 2020, Ms. Moore-Bush was transferred to MCI-Framingham, a facility with an infirmary and a full-time physician. Due to that transfer, Ms. Moore-Bush moved to withdraw her motion for release without prejudice, pending further developments with her conditions. Dkt. 561.

## II. **Ms. Moore-Bush is at an increased risk of contracting Covid-19 while incarcerated.**

At the time of the March 3, 2020 hearing on Ms. Moore-Bush's Emergency Motion for Release due to medical conditions, the dire circumstances of the spread of the deadly contagion Covid-19 were not known. Since that time, federal, state, and local governments, and private organizations have taken drastic steps to slow the spread of the virus by encouraging social distancing. The President has restricted travel across the borders of the United States. The Chief Judge of the District of Massachusetts has issued

several orders continuing nearly all cases and limiting the number of people allowed inside the courthouse to the bare minimum. See General Orders 20-1 through 20-6. The Governor of Massachusetts has joined the governors of several other states in ordering all non-essential businesses to close and issuing a stay-at-home advisory for at least several weeks. We all have changed our lives enormously in response to this grave threat.

Ms. Moore-Bush is currently held at MCI-Framingham, where she is prevented from practicing social distancing. According to public health experts, incarcerated individuals in general "are at special risk of infection, given their living situations," and "may also be less able to participate in proactive measures to keep themselves safe."[1] Outbreaks of the flu regularly occur in jails, and during the H1N1 epidemic in 2009, many jails and prisons dealt with high numbers of cases.[2] Secretary of State Mike Pompeo has called for Iran to release Americans detained there because of the "deeply troubling" "[r]eports that COVID-19 has spread to Iranian prisons," noting that "[t]heir detention amid increasingly deteriorating conditions defies basic human decency."[3] Due to the heightened risk of Covid-19 infection for incarcerated persons, Suffolk County District Attorney Rachel Rollins is reviewing the cases of defendants detained within her jurisdiction in order to agree to release those who "pose no meaningful risk to public

---

[1] "Achieving A Fair And Effective COVID-19 Response: An Open Letter to Vice-President Mike Pence, and Other Federal, State, and Local Leaders from Public Health and Legal Experts in the United States," (March 2, 2020), *at* https://bit.ly/2W9V6oS.
[2] "Prisons and Jails are Vulnerable to COVID-19 Outbreaks", The Verge (Mar. 7, 2020) *at*  https://bit.ly/2TNcNZY.
[3] Jennifer Hansler and Kylie Atwood, "Pompeo calls for humanitarian release of wrongfully detained Americans in Iran amid coronavirus outbreak," CNN (Mar. 10, 2020) *at*  https://cnn.it/2W4OpV7.

safety."[4] Rollins explained the predicament precisely: "While Americans across the country are being encouraged to self-isolate, members of our incarcerated population are, by definition, doing the exact opposite with no alternative options." Id.

MCI-Framingham is a facility of the Massachusetts Department of Corrections. The Department of Corrections announced on March 22, 2020 that three inmates and one staff member at a facility in Bridgewater have tested positive for the coronavirus.[5] Under normal circumstances, Department of Corrections staff are regularly required to work at different facilities, thus increasing the chances that Covid-19 has already spread within the system. Although counsel is not yet aware of reports of confirmed cases of Covid-19 at MCI-Framingham, it is clearly just a matter of time. According to a list compiled on March 22, 2020, more than 20 prisons and jails across the country have reported confirmed cases of coronavirus. Exhibit A.

### III. Ms. Moore-Bush's underlying medical conditions put her at a higher risk of serious complications if she contracts Covid-19.

The Centers for Disease Control has published a pamphlet regarding medical conditions that put people at risk for a higher risk of severe illness due to Covid-19. Exhibit B. Ms. Moore-Bush suffers from not one, but *five* separate conditions that put her at higher risk. She suffers from 1) asthma, 2) heart disease, 3) obesity, 4) poorly controlled diabetes, and 5) compromised immunity due to lupus. The combination of

---

[4] *"Citing Risk of Coronavirus Spread, DA Rollins Seeks Release of Many Suspects From Custody,"* March 20, 2020, WCVB Channel 5, available at https://www.wcvb.com/article/citing-risk-of-coronavirus-spread-da-rollins-seeks-release-of-many-suspects-from-custody/31781799#.

[5] John Hilliard, "Mass. DOC putting prisoners' lives at risk amid coronavirus outbreak, advocates say," Boston Globe, March 22, 2020.

these conditions puts her at the highest risk for serious complications if she contracts Covid-19. Because of this risk, she has a much greater need to practice social distancing than the general public. The only way for her to do so is through release to home confinement.

As the Court is well aware, the goal of the extreme social distancing being put in place throughout the world is to slow the spread of Covid-19 by "flattening the curve" of its rate of increase. This is a necessity in order to avoid overwhelming the health care system with the volume of those who require medical attention. Should Ms. Moore-Bush contract Covid-19 and develop serious complications, her care will place an extreme burden on the limited medical facilities within the prison system. As was demonstrated at the March 3, 2020 hearing, Ms. Moore-Bush *already* requires regular trips to outside specialists. Should she develop serious complications from Covid-19, she will require hospitalization at an outside facility, which in turn requires additional transportation and staffing by corrections officers. Releasing Ms. Moore-Bush is thus not only required for her safety, but to the general functioning of the facility where she is held as well.

### IV. A suitable residence is available, and home confinement monitored by an electronic monitoring bracelet alleviates any concerns about risk of flight or danger.

Ms. Moore-Bush proposes that she be released to her grandmother's residence. Probation has previously visited the home during prior detention proceedings and has not identified any objections based on the residence. Probation confirmed this position in advance of the March 3, 2020 hearing. Ms. Moore-Bush's grandmother and aunt were both present during the March 3, 2020 hearing. Ms. Moore-Bush's grandmother is also diabetic. This is relevant to Ms. Moore-Bush's release because her grandmother is

already practicing social distancing due to her increased risk, and because Ms. Moore-Bush will have access to a diabetic-healthy diet.

The additional conditions of home confinement and electronic monitoring satisfy any potential concerns about risk of flight or danger to the community. Any violation of those conditions will become known to the probation department immediately. Ms. Moore-Bush still faces a significant sentence, but she has a very limited criminal record. She has also been subject to pretrial detention since January 12, 2018, a period of 26 months. This extended pretrial detention is due to several unusual factors, including a necessary change of counsel after 16 months due to the discovery of a conflict of interest, Dkt. 404, and then an interlocutory appeal. Dkt. 427. Although the extended length of pretrial proceedings in this has been justified, the relevant result is that Ms. Moore-Bush now faces a potential sentence 26 months shorter than when the case began.

However, the normal factors in evaluating detention versus release simply pale in comparison to the current circumstances. The country, and the entire world, face a dire public health emergency. In light of the severe risk to Ms. Moore-Bush as explained above, release to her grandmother's home under home confinement and electronic monitoring is the only safe response. The government cannot identify any factors that require Ms. Moore-Bush to continue to put her health in serious jeopardy by requiring her continued detention.

Ms. Moore-Bush moves that any hearing on this motion be set at the Court's first available convenience.

                Respectfully submitted,

                */s/ Joshua R. Hanye*
                Joshua R. Hanye,
                  B.B.O.: 661686
                Assistant Federal Public Defender
                Federal Defender Office
                51 Sleeper Street, 5th Floor
                Boston, MA  02210
                Tel: 617-223-8061

## **CERTIFICATE OF SERVICE**

     I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on March 23, 2020.

                */s/ Joshua R. Hanye*
                Joshua R. Hanye